IRVING, P.J.,
for the Court:
¶ 1. This appeal arises from a decision of the Lowndes County Circuit Court, affirming the finding of the Board of Review (the Board) of the Mississippi Department of Employment Security (MDES) that Peggy Garrard is not entitled to unemployment compensation benefits. Feeling aggrieved, Garrard appeals and argues that the circuit court erred in affirming the Board’s ruling.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. Garrard worked as a newspaper carrier for the Commercial Dispatch Publishing Company (the Dispatch) in Columbus, Mississippi, for thirteen years. Garrard’s job required her to pick up newspapers from one of the Dispatch’s locations and deliver them to customers along her assigned routes. At the time of her termination, Garrard delivered newspapers along five routes.
¶ 4. On May 16, 2010, the Dispatch terminated Garrard due to customers’ complaints, her use of vulgar language, and her repeated failure to meet with managers at the Dispatch to discuss the customers’ complaints. After her termination, Garrard applied for unemployment benefits through the MDES. A MDES claims examiner determined that Garrard had committed misconduct and was disqualified from receiving unemployment benefits. Garrard filed an appeal, which was heard by an administrative law judge (ALJ). The ALJ conducted a telephonic hearing, at which Garrard; Peter Imes, the Dispatch’s operations manager; and Barbara Carol Talley, the Dispatch’s circulation manager, testified. While the Dispatch failed to offer any documentary evidence, Garrard offered: (1) her employment contract, (2) her termination letter, (3) examples of handwritten letters that she left with customers concerning payment methods and the timely delivery of their newspapers, and (4) a copy of a letter from the Dispatch to all of its subscribers along Garrard’s routes.
¶ 5. Imes testified that the Dispatch considered Garrard an independent contractor, not entitled to unemployment benefits. Alternatively, Imes maintained that if MDES classified Garrard as an employee subject to unemployment benefits, the Dispatch’s position is that Garrard is still not entitled to any benefits, as it terminated Garrard for misconduct. According to Imes, two things led to Garrard’s discharge — excessive errors in delivering the papers and gross insubordination. Imes stated that the customers’ complaints began soon after Garrard began delivering papers on a new route. The Dispatch’s circulation supervisor contacted Garrard five times and requested that she come into the office and meet with him about the complaints. For reasons unknown, Gar-rard refused. Imes admitted that he and Talley collectively decided to terminate Garrard.
¶ 6. Talley testified that she and another manager contacted Garrard and asked her to come into the office to discuss the customers’ complaints. The Dispatch would call Garrard every time a customer on one of her routes called to say that the custom *689 er had not received a paper or had received a rude note with the paper. Talley mentioned that she had one note from a customer that Garrard allegedly wrote on a brown paper bag, demanding that the customer pay her bill. Talley admitted that she and another manager had scheduled a meeting with Garrard but could not remember why that meeting had to be cancelled.
¶ 7. Garrard testified that prior to her termination, the managers were never concerned about her delivery methods. According to Garrard, the managers also never mentioned any customers’ complaints. Garrard denied using vulgar language with any of the managers at the Dispatch, and she denied leaving rude notes with the customers’ newspapers. Garrard admitted that, despite numerous requests from her managers, she did not meet with anyone from the Dispatch to discuss the alleged customers’ complaints.
¶ 8. After the telephonic hearing, the ALJ ruled that the Dispatch discharged Garrard after repeated insubordination. Therefore, the ALJ found that Garrard had been discharged for misconduct and was disqualified from receiving unemployment benefits. Garrard appealed the ALJ’s decision to the Board. The Board adopted the ALJ’s findings of fact and affirmed the ALJ’s decision. Garrard then appealed the Board’s decision to the circuit court. The circuit court, finding that the Board’s decision was supported by substantial evidence, affirmed the Board’s decision to deny Garrard unemployment benefits.
¶ 9. Additional facts, as necessary, will be related during our analysis and discussion of the issue.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 10. An appellate court will overturn an agency’s decision only when that decision: “1) is not supported by substantial evidence, 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates [the claimaint’s] constitutional rights.” Allen v. Miss. Emp’t Sec. Comm’n, 639 So.2d 904, 906 (Miss.1994) (citations omitted). If the Board’s findings of fact are supported by substantial evidence, those findings “shall be conclusive, and the jurisdiction of the [appellate] court[s] shall be confined to questions of law.” Miss.Code Ann. § 71-5-531 (Rev.2011).
¶ 11. Mississippi Code Annotated section 71-5-513(A)(1)(b) (Supp.2012) provides that “an individual shall be disqualified for [unemployment] benefits ... for misconduct connected with his work, if so found by the department....” The Mississippi Supreme Court has defined misconduct as:
conduct evincing such willful and wanton disregard of the employer’s interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer’s interest or of the employee’s duties and obligations to his employer, [come] within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inad-vertences and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion [are] not considered “misconduct” within the meaning of the statute.
Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982) (citation omitted). The employer carries the burden to demonstrate *690 misconduct. Trading Post, Inc. v. Nunnery, 731 So.2d 1198, 1202 (¶ 15) (Miss.1999).
¶ 12. Here, Garrard contends that, because the Dispatch failed to present any evidence of misconduct, MDES’s decision was not based on substantial evidence. We disagree. While it is true that the Dispatch did not submit any documents detailing the customers’ complaints or showing the number of unsuccessful attempts to contact Garrard, it did present testimony from Imes and Talley, which conflicted with Garrard’s testimony. Further, in the hearing before the ALJ, Gar-rard admitted that she had refused to meet with her managers at the Dispatch to discuss the alleged customers’ complaints, even when it became obvious that her continued employment with the Dispatch was in jeopardy because of her refusal to meet with her managers. While there was conflicting testimony between the Dispatch’s representatives and Garrard concerning the customers’ complaints and the numerous attempts to meet with Garrard to discuss them, the Board is entitled to accept the testimony of one witness over another. See Magee v. Miss. Dep’t of Emp’t Sec., 77 So.3d 1159, 1163 (¶9) (Miss.Ct.App.2012). Furthermore, “[the applicable] standard of review does not permit this Court to second guess how the Board resolves conflicting testimony.” Id. (quoting Quinn v. Miss. Dep’t of Emp’t Sec., 56 So.3d 1281, 1283 (¶ 9) (Miss.Ct.App.2011)).
¶ 13. Based on the above, we find that the circuit court did not err in affirming the Board’s decision. While there was little evidence concerning the alleged customers’ complaints, there was substantial evidence that Garrard was insubordinate when she continuously refused to meet with her superiors to address business concerns. This insubordination constituted misconduct and disqualified Garrard from receiving unemployment benefits. Accordingly, this issue is without merit.
¶ 14. THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT IS AFFIRMED.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS; CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.