MYERS, J.,
for the Court.
¶ 1. The Lake Castle Lot Owners Association, Inc. (LCLOAI), filed suit in the Chancery Court of Madison County against Scott Litsinger, Cindy Litsinger, Gregory Broadbridge, CJB Partners, L.P., Curtis Partners, L.P., and Retsub Partners, L.P. seeking to enforce certain covenants and to set aside certain deeds to lots located within the second addition of Lake Castle Subdivision. All of the partnerships requested and were granted motions to dismiss. The Litsingers and Broad-bridge requested and were granted a motion for summary judgment. LCLOAI filed a motion for partial summary judgment but the chancellor denied it. LCLOAI now appeals and requests our review of the following issues:
I. DID THE CHANCELLOR ERR IN DENYING THE APPELLANT’S MOTION FOR PARTIAL SUMMARY JUDGMENT?
II. DID THE CHANCELLOR ERR IN GRANTING THE APPELLEES’ MOTIONS FOR SUMMARY JUDGMENT?
III. DID THE CHANCELLOR ERR IN FINDING THAT THE APPEL-LEES DID NOT VIOLATE THE RESTRICTIVE COVENANTS?
STATEMENT OF FACTS
¶ 2. In 1937, L.C. Castle acquired title to a parcel of land located in Madison County. Castle platted that parcel of land into a thirty lot subdivision called Lake Haven of Rest, now known as Lake Castle. Edwin and Willard Sagian owned two parcels of land situated south and adjacent to Lake Castle. In 1973, the Sagians platted their two parcels into the first and second additions to Lake Castle, respectively. The first addition contained three lots and the second addition contained five lots. That same year, the Sagians encumbered all eight lots with certain protective covenants. Those original covenants provided in pertinent part as follows:
5. No lot in said Additions shall be re-subdivided. However, nothing herein contained shall prevent a person who owns two (2) adjoining lots within said Additions and/or adjacent to a lot within the original thirty (30) lot subdivision from treating the combined area of the two lots as one (1) lot for building purposes.
¶ 3. Through the years, the Sagians divested themselves of title to the five lots in the second addition to Lake Castle. Lots two and three were conveyed to CJB Partners, L.P., Curtis Partners, L.P., and Ret-sub Partners, L.P. However, the partnerships executed a warranty deed conveying lot two to the Litsingers on May 1, 1998.
¶ 4. On September 9, 1998, the owners of lots two, three, four, and five executed and tendered for approval a plat to the Madison County Board of Supervisors whereby the four lots would be platted as Adderly Gardens, part two, revised. The plat for Adderly Gardens, part two, revised, relocated the interior lot line between lots two and three from the line depicted on the plat for the second addition to Lake Castle. The purpose of the relocation was to alleviate a drainage problem. On October 28, 1998, CJB Partners, L.P., Curtis Partners, L.P., and Retsub Partners, L.P. executed an amended warranty deed and conveyed lot three of Adderly Gardens to Cindy Litsinger. That same day, Cindy Litsinger conveyed revised lot three to Gregory Broadbridge.
¶ 5. Before changing the interior lot line between lots two and three, lot two had approximately 1.80 acres and lot three had approximately 3.55 acres. After changing the interior lot line between lots two and *379 three, lot two had approximately 2.85 acres and lot three had approximately 2.50 acres.
¶ 6. LCLOAI filed suit in the Chancery Court of Madison County seeking to cancel and hold for naught the warranty deeds at issue as well as the newly configured plat for Adderly Gardens. LCLOAI also claimed they were entitled to, compensatory and punitive damages as well as attorney’s fees.
¶ 7. The partnerships involved in this case filed their motion to dismiss based on the fact that they no longer held any own-' ership interest in the property and the chancellor ruled in their favor. That judgment was not appealed by the LCLOAI, and as a result, those partnerships are not parties to this appeal. The Litsingers and Broadbridge filed motions for summary judgment arguing that the protective covenant at issué was not violated by the fact that the interior lot line between lots two and three was moved. All parties stipulated that the interpretation of the protective covenant was a matter of law for the court to decide.
¶ 8. The Chancery Court of Madison County conducted a hearing on the motions for summary judgment filed by the Litsingers and Broadbridge as well as a motion for partial summary judgment filed by LCLOAI. The trial court granted the Litsingers’ and Broadbridge’s motions and denied LCLOAI’s. Aggrieved by this result, LCLOAI filed a timely notice of appeal.
LEGAL ANALYSIS
I. DID THE CHANCELLOR ERR IN DENYING THE APPELLANT’S MOTION FOR PARTIAL SUMMARY JUDGMENT?
II. DID THE CHANCELLOR ERR IN GRANTING THE APPELLEES’ MOTION FOR SUMMARY JUDGMENT?
III.DID THE CHANCELLOR ERR IN FINDING THAT THE APPEL-LEES DID NOT VIOLATE THE RESTRICTIVE COVENANTS?
¶ 9. This case is concerned with privately created restrictions on land use and turns on the construction given the term “re-subdivided” as that term has been used in the applicable covenants involved. LCLOAI argues that the trial court erred in granting the Litsingers’ and Broad-bridge’s motions for summary judgment and in denying their own motion for partial summary judgment. As a result, we analyze both issues together.
¶ 10. We apply a de novo standard of review to a grant or denial of summary judgment by the lower court. Hudson v. Courtesy Motors, Inc., 794 So.2d 999, 1002(¶ 7) (Miss.2001). Summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). “The evidence must be viewed in the light most favorable to the moving party against whom the motion has been made.” Hudson, 794 So.2d at (¶ 7). Likewise, the burden of demonstrating that no genuine issue of material fact exists is on the moving party. Lewallen v. Slawson, 822 So.2d 236, 237(¶ 6) (Miss.Ct.App.2002).
¶ 11. “Generally courts do not look with favor oh restrictive covenants. Such covenants are subject more or less to a strict construction and in the case of ambiguity, construction is most strongly against the person seeking the restriction and in favor of the person being restricted.” Kemp v. Lake Serene Property Owners Ass’n, Inc., 256 So.2d 924, 926 (Miss. *380 1971). “An important corollary rule, however, is that the clear and unambiguous wording of protective covenants will not be disregarded merely because a use is prohibited or restricted. If the intent to prohibit or restrict be expressed in clear and unambiguous wording, enforcement is available in the courts of this state.” Andrews v. Lake Serene Property Owners Ass’n, Inc., 434 So.2d 1328, 1331 (Miss.1983). In addition, a protective covenant must be read in its ordinary sense. City of Gulfport v. Wilson, 603 So.2d 295, 299 (Miss.1992). Finally, we consider the entire document, as well as the circumstances surrounding its development when ascertaining its meaning, purpose, and intent. Id.
¶ 12. LCLOAI contends that the relocation of the interior lot line between lots two and three constituted a re-subdivision of the lots, and therefore, violates the covenant found in paragraph five of the 1973 protective covenants. The Litsingers and Broadbridge contend that relocation of the interior lot line between lots two and three did not create a new lot, and therefore, did not constitute a violation of the covenant. The trial court found that the term “re-subdivided” as used in the protective covenants and relied upon by LCLOAI was not clear, was not free from ambiguity, nor was it legally enforceable.
¶ 13. The 1973 instrument that contains the covenants does not have a definitions section. LCLOAI argues that the term “re-subdivided” can easily be defined by separating the prefix from the key word. According to LCLOAI, the term “subdivided” means to divide a part into smaller parts of the same thing or subject matter and the prefix “re” simply means to do it again. The Litsingers and Broadbridge argue that the term is incapable of being defined. This point becomes moot, however, because even if we accept LCLOAI’s definition of the term “re-subdivided” that construction still does not support the claim that the Litsingers violated paragraph five of the 1973 covenants. In other words, there was no subdivision by the Litsingers in this case much less a re-subdivision.
¶ 14. Before relocating the interior lot line, there was a lot two and a lot three. After relocating the interior lot line, there was a lot two and a lot three. No new lot was created and there was nothing smaller created from lot two or lot three. Construing paragraph five of the 1973 covenants favorably to the Litsingers and Bro-adbridge and against the LCLOAI, we find that the relocation of an interior lot line for a person who owns two adjoining lots does not constitute a re-subdivision. In view of the rules of construction applicable to restrictive covenants, we find the language at issue falls short of the degree of specificity and clarity necessary for its enforcement.
¶ 15. THE JUDGMENT OF THE CHANCERY COURT OF MADISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.